[Cite as *State v. Hill*, 2016-Ohio-472.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. Sheila G. Farmer, P.J. |
| Plaintiff-Appellee | : | Hon. W. Scott Gwin, J. |
| | : | Hon. John W. Wise, J. |
| -vs- | : | |
| | : | |
| TRACELLA HILL | : | Case No. 2015CA00074 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Court of Common
                             Pleas, Case No. 2014CR2026B


JUDGMENT:                    Affirmed


DATE OF JUDGMENT:            February 9, 2016


APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

JOHN D. FERRERO                           GEORGE URBAN
Prosecuting Attorney                      116 Cleveland Avenue, North
By: RONALD MARK CALDWELL                  Canton, OH  44702
110 Central Plaza South - Suite 510
Canton, OH  44702-1413

*Farmer, P.J.*

{¶1}    On December 19, 2014, the Stark County Grand Jury indicted appellant, Tracella Hall, on one count of endangering children in violation of R.C. 2919.22(A).  Said charge arose from appellant remaining silent even though she was aware that her husband, Vincent Hill, was sexually abusing her daughter, E.C., prior to her eighteenth birthday.  Mr. Hill was E.C.'s stepfather.

{¶2}    A jury trial commenced on March 30, 2015.  The jury found appellant guilty as charged.  By judgment entry filed April 13, 2015, the trial court sentenced appellant to one hundred eighty days in jail.

{¶3}    Appellant filed an appeal and this matter is now before this court for consideration.  Assignments of error are as follows:

I

{¶4}    "APPELLANT'S RIGHT TO DUE PROCESS WAS VIOLATED BY THE INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL."

II

{¶5}    "APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

I

{¶6}    Appellant claims she was denied the effective assistance of trial counsel because her trial counsel opened the door to inflammatory and prejudicial testimony related to Mr. Hill, the offender and appellant's husband, and acquiesced to E.C.'s account of the sexual abuse.  We disagree.

{¶7}   The standard this issue must be measured against is set out in *State v. Bradley,* 42 Ohio St.3d 136 (1989), paragraphs two and three of the syllabus.  Appellant must establish the following:

2. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance.  (*State v. Lytle* [1976], 48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623; *Strickland v. Washington* [1984], 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, followed.)

3. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.

{¶8}   This court must accord deference to defense counsel's strategic choices made during trial and "requires us to eliminate the distorting effect of hindsight."  *State v. Post,* 32 Ohio St.3d 380, 388 (1987).

{¶9}   The central theme of defense counsel's trial strategy was that E.C. was over eighteen years of age when appellant discovered that her husband was sexually abusing her daughter; therefore, E.C. was not a minor and appellant could not have committed the crime of endangering children.  T. at 127-128, 210-211, 213-214.  Defense counsel also cast doubt on E.C.'s ability to recall dates.  T. at 210, 213-214.

{¶10} On direct examination, E.C. testified her stepfather sexually abused her during the ages of sixteen to nineteen. T. at 131. She stated appellant witnessed one of the sexual assaults by entering the bedroom with a flashlight. T. at 137-138. She was not entirely sure how old she was when this incident happened, but testified "I do believe I was very close to my 18th birthday." T. at 138. She agreed she was seventeen when it happened. *Id.*

{¶11} On cross-examination, defense counsel questioned E.C.'s credibility because she did not move out of the home until she was nineteen, and there was innuendo that E.C. could have left after her eighteenth birthday. T. at 163-165. Defense counsel pointed out that E.C. had trouble with dates and E.C. agreed (T. at 173):

Q. You said you had trouble with dates?

A. Yes.

Q. Okay. And that's why you're saying you don't remember which day you actually left the house and which months you actually left the house, and all this good stuff, right?

A. Yes.

{¶12} On redirect, the state asked E.C. why she did not move out at eighteen. T. at 174. She stated "I was not permitted to leave.***They didn't want me to move." *Id.* Following a sidebar, the trial court permitted the complained of testimony about Mr. Hill threatening E.C. when she packed her bags to leave the home when she was nineteen (T. at 175-178):

Q. [E.] was there a time that you attempted to leave?

A. Yes.

Q. And were you prevented from leaving?

A. Yes.

Q. Okay.  When was that?

A. I can't recall specifically.

Q. Okay.  Do you recall if you were 18 or 19?

A. I was 19 years of age.

Q. Okay.  And can you tell us about that?

A. I had my bags packed at my feet, ready to go.  I was standing in my kitchen.  And my stepfather, Vince, was at the door screaming at me.  I told him I wanted to leave, I couldn't live there no more, I couldn't take his abuse, and I had all rights to go.  That's when he proceeded to grab a .9 millimeter handgun from his bedroom and shoot it at my feet and told me if I would leave that both me and my fiancé, Charles, would both be dead.

Q. And was your mom present when that happened?

A. Yes, she was.

Q. And she was in the same room with you?

A. Yes, she was.

{¶13} We find this testimony only established the atmosphere of fear due to the offender living in the home that kept E.C. from reporting the sexual abuse earlier.  If

anything, Mr. Hill's violent nature added sympathy to appellant's plight in her decision not to report what she had observed.

{¶14} Appellant also argues defense counsel indirectly bolstered E.C.'s credibility by accepting her account of the sexual abuse. The issue was what did appellant know and when did she know it. Defense counsel questioned E.C. on what was actually occurring in the bedroom when appellant walked in with the flashlight. T. at 167-168. During closing argument, defense counsel argued (T. at 212):

> And we've had a lot of testimony - - let's go back to the night that [E.] says this happened, that everyone says that dad was raping her when mom walked in. If you recall the testimony, again, allegedly he was drunk, he took her clothes off, pushed her down on the bed, according to her, then mom walked in, shined the flashlight, dad fell on the bed drunk. That's hardly catching them in the act of rape if, in fact, that's what happened.
>
> Do we even know really what happened because this is the one time in all this time, she's saying that this happened in mom and dad's bedroom, all the other times she talks about it happened in her room. But this one time happens in mom and dad's bedroom. Did it really? Beyond a reasonable doubt?

{¶15} Although defense counsel chose not to attack E.C.'s sexual abuse allegations against her stepfather, defense counsel questioned her credibility on the issue central to the case sub judice.

{¶16} Upon review, we find no undue prejudice resulting to appellant that would have affected the outcome of the trial.

{¶17} Assignment of Error I is denied.

II

{¶18} Appellant claims her conviction was against the sufficiency and manifest weight of the evidence as the evidence failed to prove that E.C. was under eighteen years of age at the time of the offense. We disagree.

{¶19} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks,* 61 Ohio St.3d 259 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus, following *Jackson v. Virginia,* 443 U.S. 307 (1979). On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175 (1st Dist.1983). See also, *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175. We note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison,* 49 Ohio St.3d 182 (1990). The trier of fact "has the best opportunity to view the demeanor, attitude, and

credibility of each witness, something that does not translate well on the written page."

*Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 1997-Ohio-260.

{¶20} Appellant was convicted of endangering children in violation of R.C. 2919.22(A) which states the following in pertinent part:

No person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age, shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support.

{¶21} E.C. testified her stepfather sexually abused her from the time she was sixteen to nineteen years of age. T. at 131. E.C. testified appellant witnessed one of the sexual assaults (T. at 137-138):

Q. [E.], at any point when these things were happening to you, did anybody see what was going on?

A. Yes. My mother was a witness - -

Q. Okay.

A. - - to one of the assaults, with a flashlight.

Q. Okay. And do you remember anything about that night?

A. Yes, I do. Vince was very intoxicated. The smell of whiskey and beer was overpowering on his breath. He took me into his bedroom by the

hand and forced me to the bed and ripped - - ripped off my clothes.  A few moments later, my mother entered the doorway with a flashlight and shined it on the both of us.

Q. Okay.

A. She asked him what he was doing.  He was so incanherent - - incoherent, he just rolled over and flopped onto the bed.  My mother asked me to leave.  I sat in my bathtub and I cried.

Q. How old were you when that happened?

A. I do - - I'm not entirely sure, but I do believe I was very close to my 18th birthday.

Q. Okay.  So you were 17 when that happened?

A. Yes.

{¶22}  The next morning, appellant, E.C., and Mr. Hill had a discussion about the incident, "[w]e were supposed to deal with it right then and there."  T. at 139.  Appellant "wanted to discuss this as a family matter."  *Id.*  Appellant made Mr. Hill promise he would never do it again and although he promised, "[h]e did not hold to that promise."  *Id.*  It happened again, before E.C. turned eighteen.  T. at 153.  When questioned as to whether she asked appellant to call the police, E.C. explained: "She told me it wasn't necessary, she would deal with it.  She would do whatever she could to protect me."  T. at 139-140.  E.C. wanted to leave the home, but appellant would not permit her to leave.  T. at 140.  On cross-examination, defense counsel questioned E.C. as to why she did not leave the

home after her eighteenth birthday, and pointed out that E.C. had trouble with dates.  T. at 163-165, 173.

{¶23}  Crystal Cricks, E.C.'s stepsister and Mr. Hill's daughter, testified appellant told her "she had walked into my father raping [E.]."  T. at 188.  Appellant told her she did not call the police because "it was a family problem and it would be held inside the household and they would deal with it as a family."  *Id.*

{¶24}  When questioned by the police, appellant denied any knowledge of her husband sexually abusing her daughter or walking in and witnessing anything.  T. at 193.

{¶25}  The jury had the opportunity to observe the demeanor and to test the credibility of E.C. on the issue of her age at the time appellant observed the sexual abuse of E.C. by Mr. Hill.  E.C. testified she was seventeen at the time and additional incidents of sexual abuse occurred before she turned eighteen.  T. at 138, 153.

{¶26}  Upon review, we find the jury was presented with substantial credible evidence regarding appellant's observation of her husband's sexual abuse of her daughter prior to her eighteenth birthday, supporting a finding of guilty on the endangering children charge.  We do not find any manifest miscarriage of justice.

{¶27}  Assignment of Error II is denied.

{¶28} The judgment of the Court of Common Pleas of Stark County, Ohio is hereby affirmed.

By Farmer, P.J.

Gwin, J. and

Wise, J. concur.

SGF/sg 115